2013 Ark. App. 411

**Jaron JACKSON, Appellant**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES and Minor Child, Appellee.**

**No. CV–13–152.**

Court of Appeals of Arkansas.

June 19, 2013.

Leah Lanford, Arkansas Public Defender Commission, for appellant.

Tabitha Baertels McNulty, County Legal Operations, for appellee Arkansas Department of Human Services.

Chrestman Group, PLLC, by: Keith Chrestman, for appellee minor child.

PHILLIP T. WHITEAKER, Judge.

Jaron Jackson appeals from a Washington County Circuit Court order terminating his parental rights to his six-year-old son, A.J.[1] His sole challenge to the termination is that there was insufficient evidence of any ground to support the termination. We reverse.

Christina South is the mother of two children, A.J. and J.S. On August 31, 2011, the Department of Human Services (DHS) exercised an emergency seventy-two-hour hold on A.J. and his younger half-sister, J.S., when South tested positive for illegal substances after giving birth to J.S.

At the initiation of this proceeding, Jackson's whereabouts were allegedly unknown.[2] Jackson was served with a copy of the summons, petition, and notice of an adjudication hearing by warning order. The children were adjudicated dependent-neglected as a result of neglect and paren-

---

1. The parental rights of Christina South to A.J. and his half-sister, J.S., were terminated by separate order. The parental rights of Ryan West, the putative father of J.S., were also terminated. South and West are not parties to this appeal.

2. Jackson testified that he was on parole in Louisiana throughout the course of the proceeding.

tal unfitness. The court's order found that the mother had used illegal drugs during her pregnancy with J.S., that the putative fathers had not established paternity, and that J.S.'s father was incarcerated.

Throughout the proceeding, Jackson did not participate. Review orders continued services for the mother. The orders continued to note that Jackson's whereabouts remained unknown, that he had had no contact with DHS, and that he had not established paternity. A permanency planning review order noted that Jackson had not complied with the orders of the court and had made no progress towards alleviating or mitigating the causes of the juvenile's removal from the home or completing the court orders and requirements of the case plan. Jackson was absent for the permanency review hearing where the permanency goal was changed from reunification to termination of parental rights and adoption.

A petition for termination of parental rights was filed on September 7, 2012. At the time the petition was filed, Jackson's address was still unknown, and he was served with the petition by warning order. The petition alleged two statutory grounds for termination of parental rights: (1) the juveniles had been adjudicated dependent-neglected, had resided outside of the home of the parents for twelve months, and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions had not been remedied by the parent; and (2) other factors or issues had arisen subsequent to the filing of the original petition for dependency-neglect that demonstrated that return of the juveniles to the custody of the parents was contrary to the juvenile's health, safety, or welfare, and that, despite the offer of appropriate family services, the parent had manifested the incapacity or indifference to remedy the subsequent issues or factors which prevent return of the juvenile to the custody of the parents. The petition specifically noted that Jackson had not participated in the case plan or court orders and had not maintained contact with DHS.

Jackson appeared before the court for the first time at the October 13, 2012 termination hearing. The trial court terminated the rights of the mother but continued the case as to Jackson. Jackson was appointed an attorney, and the termination hearing was rescheduled for November 14, 2012. He was personally served with the summons, petition, and notice of hearing.

The trial court terminated Jackson's parental rights, listing three grounds to support termination. First, the trial court found that the juvenile had been adjudicated dependent-neglected, had remained outside the home for twelve months, and that, despite a meaningful effort by DHS, the conditions requiring removal had not been corrected. Second, the court found that the child had lived outside the home for a period of twelve months and that Jackson had willfully failed to provide material support or maintain meaningful contact with the child. Third, the trial court found that other factors arose after the filing of the original petition and that Jackson had shown either an incapacity or an indifference to remedy the conditions preventing the child's return to his custody. Finally, the trial court found the termination was in the best interest of the juvenile by clear and convincing evidence taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent.[3]

---

**3.** Jackson does not challenge the court's best-interest findings.

■ Termination-of-parental-rights cases are reviewed de novo. *Hune v. Ark. Dep't of Human Servs.,* 2010 Ark. App. 543, 2010 WL 2612681. Grounds for termination of parental rights must be proved by clear and convincing evidence, which is that degree of proof that will produce in the finder of fact a firm conviction of the allegation sought to be established. *Hughes v. Ark. Dep't of Human Servs.,* 2010 Ark. App. 526, 2010 WL 2522197. The appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *J.T. v. Ark. Dep't of Human Servs.,* 329 Ark. 243, 248, 947 S.W.2d 761, 763 (1997). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In resolving the clearly erroneous question, we give due regard to the opportunity of the trial court to judge the credibility of witnesses. *Camarillo–Cox v. Ark. Dep't of Human Servs.,* 360 Ark. 340, 352, 201 S.W.3d 391, 399 (2005). Termination of parental rights is an extreme remedy and in derogation of a parent's natural rights; however, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Meriweather v. Ark. Dep't of Health & Human Servs.,* 98 Ark. App. 328, 331, 255 S.W.3d 505, 507 (2007).

Jackson argues that there was insufficient evidence submitted to support the grounds for termination. More specifically, he argues that the trial court improperly relied on a ground not alleged in the petition for termination (no material support or meaningful contact) and improperly relied on a ground not applicable to him

(failure to remedy the conditions causing removal). Finally, Jackson argues that the third ground relied on by the court was insufficient because DHS failed to show that DHS made any offer of appropriate family services or that he had not remedied the subsequent factors that prevented return of the child.

■ In order to terminate parental rights, the trial court must find by clear and convincing evidence that one or more statutory grounds for termination exists. Ark.Code Ann. § 9–27–341(b)(3)(B) (Supp. 2011). Proof of only one statutory ground is sufficient to terminate parental rights. *Gossett v. Ark. Dep't of Human Servs.,* 2010 Ark. App. 240, at 7, 374 S.W.3d 205, 209.

### I. *Failure to Provide Significant Support or Maintain Meaningful Contact*

■ Jackson first argues that the trial court erred in relying on Arkansas Code Annotated section 9–27–341(b)(3)(B)(ii)(a)[4]—a ground not pled in the petition—to support termination. Jackson argues that this error resulted in a violation of his due-process rights. *See K.C. v. Ark. Dep't of Human Servs.,* 2010 Ark. App. 353, 374 S.W.3d 884. He is correct.

■ Our supreme court has extended many of the same Fourteenth Amendment due-process safeguards to proceedings involving the termination of parental rights as have been found to be constitutionally mandated in criminal trials. *Id.; see also Clemmerson v. Ark. Dep't of Human Servs.,* 102 Ark.App. 1, 4, 279 S.W.3d 484, 487 (2008) (citing *Jones v. Ark. Dep't of Human Servs.,* 361 Ark. 164, 205 S.W.3d 778 (2005)). Due process requires, at a

---

4. That section provides:
    The juvenile has lived outside the home of the parent for a period of twelve (12) months, and the parent has willfully failed to provide significant material support in accordance with the parent's means or to maintain meaningful contact with the juvenile.

minimum, notice reasonably calculated to afford a natural parent the opportunity to be heard prior to terminating his or her parental rights. *Kight v. Ark. Dep't of Human Servs.*, 94 Ark.App. 400, 409, 231 S.W.3d 103, 109 (2006).

The court relied on Arkansas Code Annotated section 9–27–341(b)(3)(B)(ii)(*a*) as a ground to terminate. This ground was not alleged in the petition. Jackson had no notice prior to the termination hearing that his parental rights might be terminated on this basis. DHS never amended its petition or moved to conform the pleadings to the proof. While evidence that Jackson had failed to provide support or maintain contact with A.J. was admitted at the hearing, such evidence was also relevant to the best-interest-of-the-child prong of the termination analysis.[5] At no time did DHS specifically argue that the trial court should rely on this ground for termination. Thus, Jackson was not placed on notice that he must defend on this particular ground. Then at the close of the hearing, the trial court did not make a ruling from the bench, but rather took the matter under advisement. The first time this ground was ever specifically mentioned as a ground for termination was in the trial court's order terminating Jackson's parental rights. Because Jackson was never specifically informed that this ground was being asserted against him, Jackson was denied the opportunity to fully develop a defense to this ground or to adequately address this ground during closing arguments. Thus, the trial court's reliance on this ground to support termination was clearly erroneous. Due process dictates that Jackson be afforded an opportunity to properly defend the allegations against him prior to terminating his parental rights. *See Kight, supra.*

## II. *Failure to Remedy Conditions that Caused Removal*

Jackson next argues that the trial court erred in relying on Arkansas Code Annotated section 9–27–341(b)(3)(B)(i)(a) for termination because his conduct did not cause the removal. That section provides as a ground for termination

> [t]hat a juvenile has been adjudicated by the court to be dependent-neglected and has continued to be out of the custody of the parent for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent.

This particular ground requires that (1) the child be adjudicated dependent-neglected, (2) the child be out of the custody of the parent for twelve months, and (3) the parent failed to remedy the conditions that caused the child's removal. *K.C., supra.*

DHS argues that the children were removed because of the mother's drug use and because there was no appropriate caregiver; thus, Jackson's absence was a cause of the removal. However, we do not believe that the statute should be so construed. In *Jones v. Arkansas Department of Human Services*, 2011 Ark. App. 632, 2011 WL 5110176 we stated "the courts may not alter or disregard the language of a legislatively enacted ground for termination," and "[i]f the ground, as worded, does not fit the facts of the case, it should not be used." We do not interpret this provision of the statute as broadly as DHS asserts. The juvenile, A.J., came into DHS custody because of the mother's drug usage. Jackson's absence was not the cause of the removal; this provision is not

---

5. The court noted that Jackson had failed to establish paternity, had failed to show any stability, and had failed to demonstrate the ability to properly care for the child or keep him safe, all of which are factors that go to the best-interest analysis.

applicable to him and cannot support a ground for termination.

### III. *Other Factors Arising Subsequent to the Filing of the Petition*

Finally, Jackson argues that there was insufficient evidence to support termination under Arkansas Code Annotated section 9–27–341(b)(3)(B)(vii)(*a*),[6] because DHS failed to offer any appropriate family services to him and because there was no evidence that he failed to remedy the subsequent factor.

Jackson made his first appearance in this case at the October 13, 2012 termination hearing. The caseworker did not speak with Jackson at that hearing, nor did she provide him with her contact information. In fact, she never attempted to contact him for any information after the October 13 hearing to determine whether he was a suitable caregiver, nor did she attempt to identify any services that might permit reunification. Because DHS failed to show that it took any steps (1) to contact Jackson after his appearance in the case, (2) to determine his suitability as a caregiver, or (3) to provide services to him, this ground was not proved.

Based on the foregoing, we hold that the circuit court clearly erred in finding that the grounds for termination were proved by clear and convincing evidence.

Reversed and remanded.

WALMSLEY and WOOD, JJ., agree.

---

6. That section provides

[t]hat other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that return of the juvenile to the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent return of the juvenile to the custody of the parent.
Ark.Code Ann. § 9–27–341(b)(3)(B)(vii)(*a* ).